Ida M. Autenrith, Appellee, v. A. B. Wilder, et al.    Frank C. Bloom, Appellant.

Gen. No. 15,092.

1.  CHANCERY—*when jurisdiction cannot be questioned.* If a party voluntarily submits all of his rights in the subject-matter of litigation to a court of chancery by the filing of an intervening petition in a pending cause, he will not be heard to question the jurisdiction of the court to adjudicate fully and completely with respect to the subject-matter of such controversy so far as he is concerned therein.

2.  DECREES—*when refusal to reopen proper.* A refusal by the court to open up a decree to receive new evidence is proper where the motion to reopen is predicated upon an affidavit disclosing no facts not previously known or accessible to the moving party by reasonable diligence.

3.  CONTEMPT—*when chancery has jurisdiction to commit for.* If a party voluntarily submits both himself and the subject-matter involved to the jurisdiction of the court, such court has power to commit him for failure to obey an order made with respect to such subject-matter.

Bill to dissolve partnership, etc.  Appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.  Heard in this court at the October term, 1908.  Affirmed.  Opinion filed May 19, 1910.

Josiah Burnham, for appellant.

Ela, Grover, March & Eckert, for appellee.

Mr. Presiding Justice Holdom delivered the opinion of the court.

Ida M. Autenrith and A. B. Wilder were partners at Chicago in the millinery business, this bill being filed

by Ida M. Autenrith against her partner, A. B. Wilder, to dissolve the partnership and for the appointment of a receiver of its assets. The disputes between the partners are not involved in this appeal. It is Frank C. Bloom, who submitted his rights in the premises as an intervening petitioner, who prosecutes this appeal and brings before us for review the propriety of the orders affecting his interests entered March 19, 1908, holding his answer to a rule to show cause why he should not be dealt with as for a contempt of court insufficient to exculpate him from the contempt charged, refusing to open the final decree for further evidence, overruling appellant's exceptions to the master's special report and confirming the report, and ordering him to pay certain costs, and on March 26, 1908, declaring him in contempt of court and committing him to the county jail in default of paying $699.55, the value of the goods involved in the order to show cause.

We gather from the evidence that Wilder became dissatisfied with his business relationship with appellee and sought to hit on some plan to terminate it. He seems to have consulted with appellant and the action subsequently taken was largely at appellant's suggestion. Wilder by subterfuge induced appellee to go on a "shopping" expedition with his wife, and in her absence and without her consent or knowledge caused all the partnership property to be removed from the store where the business of the firm was transacted. The property, or the major part of it, was ultimately traced to the possession of Bloom, who set up a claim to title in virtue of a bill of sale from Wilder. A receiver of the partnership property was appointed. Some of the property was located at a store rented by Bloom, which the receiver took possession of. An order was entered on Bloom to deliver certain property of the partnership to the receiver June 5, 1907. On June 11, 1907, Bloom asked and obtained leave of the court to file an intervening petition instanter, and did so. In that intervening petition, after reciting the sev-

eral pleadings and orders entered in the cause, including the order of June 5, 1907, that he turn certain property over to the receiver, he averred that he obeyed the order by delivering certain articles to the receiver, but claimed that all of such property belonged to him. The manner of acquiring title he asserts was by loaning the firm $550 February 27, 1907, for which amount he took the firm note payable in sixty days; that on the maturity of the note the firm turned over to him the partnership goods and property in dispute in payment and he accepted the same in satisfaction of that indebtedness; that he thereby became the owner of the goods and property, taking possession thereof and placing it in his store at 579 North Clark street, Chicago, and that the whole thereof did not exceed in value $500. Bloom made appellee a party to his intervening petition and prayed for a rule on her to answer and that he be decreed to be the owner of the property and entitled to its possession, and that the receiver be directed to deliver such property to him, etc. Appellee answered Bloom's intervening petition by denying the material averments under which he sought to maintain title to the partnership assets and more particularly denying the loan of $550 to the partnership firm or the delivery of its assets and property to Bloom in satisfaction. On June 8, 1907, on motion of solicitor for appellee and Bloom, the appellant, certain matters were referred to a master of the court, which included issues to be joined on the intervening petition of Bloom to be filed later and which was filed three days thereafter.

The master found and the chancellor decreed that Wilder and Bloom entered into a conspiracy to fraudulently divest appellee of her interest in the partnership assets, and that in pursuance thereof Bloom unlawfully obtained possession of such assets. We think it clear that the conspiracy was established, also that the firm did not obtain any loan from Bloom at any time, that Bloom's contention in this regard is mere pretense and

unfounded, and that his own testimony sufficiently so demonstrates.

We do not feel called upon, in the state of the record, to pass upon the regularity of the proceeding against appellant or whether the receiver should not have been directed to proceed against Bloom in an action at law, either to recover the specific property of the partnership which he unlawfully acquired and held, or for a judgment for the value thereof. Bloom in our judgment waived all such questions by voluntarily submitting all of his rights in the premises to the court when he filed his intervening petition. He cannot now question the right of the court to adjudicate upon the controversy which he importuned the court to settle. After the entry of the rule on him to deliver the partnership property to the receiver, he might have contested the power of the court to deal with him at all in relation to it and have challenged its authority in this regard, but he elected to submit the disputes to the court in that proceeding and he cannot now escape its adjudication by challenging its power. Whatever authority the court may have lacked in the first instance was conferred by voluntarily filing the intervening petition, in which the judgment of the court was asked in the controversy which it adjudicated against appellant's interest and contrary to his contention.

We see no impropriety in the order of March 19, 1908, or that it does any injustice to appellant. Bloom was guilty of conspiring with Wilder to defraud appellee of her interest in the partnership property owned jointly by her and Wilder as partners, and he certainly had no right or title to such property as against the receiver of the firm assets. True it is that proof of the value of the articles involved is not as satisfactory as might be wished. The difficulties, however, in making more satisfactory proof were of Bloom's creation. He removed the property during appellee's absence from the store, depriving her of any opportunity to make an inventory; he then secreted it, and his co-con-

spirator, appellee's partner, departed to the adjoining State of Michigan. All the circumstances considered, the value of the withheld goods was sufficiently proven to make a *prima facie* case putting Bloom in a position where it became incumbent upon him to rebut or overcome such proof if he could. This worked no hardship on him. He took the property into his possession, and if he desired to protect himself he should have preserved and proffered evidence of the property actually taken and of its value.

We think the stenographer's fees for taking and transcribing testimony given before the master may fairly be said to be covered by the stipulation concerning them found in the record.

The motion of appellant to open the decree and for leave to take further proofs came too late and was properly overruled. The affidavit of Mildred Chalmers did not disclose any facts which were not known or accessible to Bloom by proper diligence at the time he offered his proofs before the master, and no reasonable excuse was given why Mildred Chalmers was not offered as a witness at some of the several hearings before the master.

We think the court, acting upon the answer of Bloom to the rule requiring him to deliver to the receiver the specific articles of which he had possession, in which answer Bloom requested that the rule against him be so modified as to require him to pay the value of such articles, did not err. In so doing the court simply heeded such request, and appellant is consequently barred from now complaining of the action taken by the court on his own motion.

The court had jurisdiction to make the order of committal of Bloom for contempt. Bloom had the property ordered delivered in his custody, and for aught that appears to the contrary he had it when the order was entered. He had the alternative of paying the value of the property if for any reason he did not or could not deliver it. There is no fact, in this record, from

which the conclusion may be drawn that Bloom is not abundantly able to pay the amount ordered paid as the value of the property, on failure to deliver it to the receiver in kind. The court had jurisdiction of the subject-matter of the contempt order and of the parties. So far as Bloom is concerned, he voluntarily submitted both himself and the subject-matter involved to the jurisdiction of the court. This was sufficient to invest the court with power to discipline him on failure to obey its orders. Nelson v. London C. & A. Co., 132 Ill. App. 10; Barnes v. Typographical Union No. 16, 232 Ill. 402.

Finding no reversible error in the record injuriously affecting the rights of appellant, the orders of the Superior Court involved in this appeal are affirmed.

*Affirmed.*